## D. W. HOLDERMAN et al. v. A. S. SMITH.
### No. 57.

1. CONTRACT—*Title to Personal Property under Lease.* Where R. leased certain farming lands of S. upon which to raise a crop of corn, and, as a part of the consideration in said lease, it was stipulated that R. was to raise corn for 14 cents per bushel, and it was to be put in shock or crib as S. should direct, the corn to be averaged and paid for on the 1st day of December, *held*, that R. was the owner of the corn, and it was at his risk of loss or damage until such time as the same should be averaged and paid for by S.

2. INSTRUCTIONS—*Should Conform to Pleadings and Evidence.* It is error for the court in charging the jury to state to them that certain facts are conceded when the pleadings and evidence are directly contrary to the facts stated as conceded. The instructions of the court should state the issues between the parties clearly as they are set out in the pleadings, and the claims of the parties as disclosed by the evidence.

MEMORANDUM.— Error from Lyon district court; CHARLES B. GRAVES, judge. Action by A. S. Smith against D. W. Holderman and Carl Nation on a contract of sale of personal property. Judgment for plaintiff. Defendants bring the case to this court. Reversed. The opinion herein, filed January 11, 1896, states the material facts.

*T. N. Sedgwick,* and *L. B. Kellogg,* for plaintiffs in error.

*I. E. Lambert,* and *Graves & Dickson,* for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: A. S. Smith brought suit in the district court of Lyon county against D. W. Holderman and Carl Nation to recover the sum of $372.50 on account of the sale by Smith to Holderman and Nation of a certain amount of corn. The corn was raised by William Reed on the lands of Smith under the following lease:

"This lease, made this 8th day of March, 1889, by A. S. Smith of the first part to Wm. Reed of the second part: Witnesseth, That the said party of the first part, in consideration of the rents, covenants and agreements of the said party of the second part hereinafter set forth, do and by these presents grant, lease and rent to the said party of the second part the following-described property, situated in the county of Lyon and state of Kansas, to wit: S.W. ¼ of section 15, township 19, range 12.

"To have and to hold the same, unto the said party of the second part, from the 1st day of March, 1889, to the 1st day of March, 1890; and the said party of the second part, in consideration of the leasing the premises as above set forth, covenants and agrees with the said party of the first part to pay the said party of the first part, his heirs and assigns, as rent for the same: Second party is to raise corn for 14 cents per bushel, and is to put said corn in shock or in crib as first party may designate; corn shall be well cultivated, at least four times over, and put up in good condition, and at the proper time, and if cut shall be tied with twine furnished by first party, and is to keep said farm free from weeds or grass to the injury of the crop, and if second party fails to do this, first part shall have the right to put in a force and clean the corn or cultivate it, as the case may be, and the corn shall be liable for the expense incurred, and in case first party has to do this and if we cannot agree in regard to the necessity of the expenses each party shall choose one disinterested person, and if the two

chosen cannot agree they shall choose the third to decide the matter, and the way they decide shall be binding to both; second party is to put all the cultivated land in corn and is not to have any corn to feed or otherwise, excepting the orchard field, that is to be divided in shock, first party getting one-half the corn and pays 8 cents per shock for cutting one-half; second party agrees to keep orchard and hedge trimmed and keep fences and buildings in good repair, and is to carefully pick and deliver to first party one-half of all the apples at Emporia.   Second party is to have down wood sufficient for use of family to burn, but shall not cut or allow cut any standing timber without consent of first party; first party keeps control of all feed lots excepting the one at the barn; corn to be averaged 1st of December, 1889, in shock, to be paid for when averaged.   Hereby waiving the benefit of exemption, valuation and appraisement laws of the state of Kansas, to secure the payment thereof.   The said party of the second part further agrees to farm said land in due season, and in a good and husband-like manner, and protect the same from prairie fires by burning of sufficient fire-guards, and to trim and cultivate all fruit and ornamental trees, and see that they are not injured by animals, and in case he fails to do so, agrees to pay the sum of $——— per acre for the said land, at the election of the said party of the first part.

"The said party of the second part further covenants with the said party of the first part, that at the expiration of the time mentioned in this lease to give peaceable possession of the said premises to said party of the first part, and in as good condition as they are now, the usual wear, inevitable accidents and loss by fire excepted, and will not make or suffer any waste thereof, nor lease, nor underlet, nor permit any other person or persons to occupy the same, or make or suffer to be made any alterations therein without the consent of said party of the first part in writing having been first obtained, and not use or occupy said premises for any business or thing deemed extrahaz-

ardous on account of fire: *Provided, however,* And this lease is upon this express condition, that if the said rents shall not be paid within —— days after they become due, without demand, or in case of a failure on the part of the lessee to keep or perform any of his covenants and agreements herein, then and in either case it shall be lawful for the lessor, without any notice or demand of any kind whatever, to treat this lease as at an end and void, and to reenter and take possession of said premises by an action for forcible detainer, or otherwise. The covenants herein shall extend to and be binding upon the heirs, executors and administrators of the parties to this lease.

" In witness whereof, The said parties have hereunto set their hands, the day and year first above written.

A. S. Smith.<br>Wm. Reed."

Holderman and Nation claim to have purchased the corn of Smith and Reed jointly ; that in the purchase of the corn they agreed to pay 14 cents per bushel to Reed and 1 cent per bushel to Smith ; that the corn was purchased at 15 cents per bushel, and that Reed, under the lease, was to receive 14 cents per bushel for his part of the corn, and that they purchased the interest of Reed as well as that of Smith. The case was tried before the court with a jury, resulting in a verdict for plaintiff for the sum of $215. Holderman and Nation excepted, made case, and bring the same to this court for its determination.

The court instructed the jury on the trial of the case as follows :

" It appears from the evidence that the plaintiff owned the land where the crop in question was raised, and that he hired Reed to raise the crop, and was to pay 14 cents per bushel therefor. The crop raised belonged to Smith, and he owed Reed 14 cents per bushel for raising. Reed had no right to sell the corn unless authorized to do so by Smith."

This was not the correct construction of the lease under which the crop was raised. Reed leased the land of Smith to raise a crop on during the crop season of 1889, which lease expired March 1, 1890, and, as a part of the consideration for such letting, Smith agreed to pay Reed 14 cents per bushel for all corn raised on certain portions of the leased premises; the corn to be cut up and put in shocks or in the crib as Smith might direct; the corn was to be averaged on the 1st day of December, 1889, and to be paid for when averaged. The corn raised on the leased premises was the property of Reed and was at his risk until such time as it might be averaged and paid for by Smith. If by any means the corn should be lost or destroyed by fire or otherwise, it would be Reed's loss, and Smith would not be liable for the same. In case Reed refused to deliver the corn Smith could not obtain possession of it by replevin. It was Reed's property, in his possession and at his risk of loss, subject only to a lien of Smith as landlord. Reed had by the terms of the lease agreed to sell it to Smith and Smith had agreed to purchase the same. If Smith had refused to comply with the terms of the lease in paying Reed for the corn at the rate of 14 cents per bushel, Reed could not have maintained an action against Smith to recover the 14 cents per bushel for the corn. He would have to sell the corn to other parties, and if he was damaged by reason of Smith's failure to comply with his contract, his measure of damages would be the actual loss he sustained by the failure to realize the 14 cents per bushel for the corn, and the trouble and expense attending the sale and delivery of the corn elsewhere. If Reed refused to cut up the corn or deliver it to Smith, and accept the 14 cents per bushel, Smith's damages would have been

the difference between the 14 cents per bushel and the market price of the corn at the time and place at which the corn should have been averaged, and Smith might have enforced his claim for damages by attachment under his landlord's lien.

The plaintiff in error complains of the following instruction of the court:

"It is conceded that defendants were to pay plaintiff 15 cents per bushel for the corn, but they disagree how the number of bushels was to be ascertained. The defendants claim that they were to pay 15 cents per bushel for the number of bushels for which the tenant, Reed, and Smith agreed upon as his pay at 14 cents per bushel, while the plaintiff claims that they were to pay 15 cents per bushel for all that was raised on this place, without regard to any agreement between plaintiff and Reed, except that Reed was to be paid $600."

This instruction was misleading and did not state the claim of the parties correctly. The defendants below in their answer alleged:

"Second. And for a second defense and further answer herein these defendants allege and say to the court, that they purchased of the plaintiff, A. S. Smith, and a tenant on his farm, the corn raised by the tenant, amounting to the sum of —————— bushels of corn, for which said corn they were to pay the tenant the sum of 14 cents per bushel and the plaintiff in this action, A. S. Smith, the sum of 1 cent per bushel, which they promised and agreed to pay; that afterwards, and before this action was commenced, these defendants paid said tenant the sum of 14 cents per bushel for said corn, and thereafter paid the plaintiff, A. S. Smith, the sum of $10, being a portion of the amount of the purchase price of said corn that he was entitled to receive, and thereafter, and prior to this action, and since the commencement of this action, these defendants have tendered to the plaintiff, A. S. Smith, the sum of $55, being more than the balance

due him upon the said corn at the price of 1 cent per bushel, which said tender the said plaintiff, A. S. Smith, refused to accept; that since this action was commenced these defendants again tendered said Smith the sum of $55, which said Smith refused to accept, and these defendants now here tender said Smith said $55, and hereby bring the money into court and deposit the same with the clerk, in order that said tender of the sum of $55 may be kept good.''

Holderman was a witness on the trial of this case, and in his testimony said:

'''We finally agreed on paying the colored man (Reed) 14 cents per bushel and Smith 1 cent per bushel.

'' Ques. Did Smith say anything to you to the effect that he had settled with Mr. Reed for $600, and that $600 would go to Reed and the balance to him? Ans. No, there was nothing said about it, except that Reed was to have 14 cents per bushel and he was to have 1 cent per bushel.

'' Q. Was there anything said about your going out and settling with Reed? A. I had to settle with Reed and pay Reed for his corn; that was the arrangement in the first place.''

On the cross-examination, the witness testified as follows:

'' Ques. Did n't you understand that the corn was Smith's and he had hired Reed to tend to it — to raise it? Ans. No, I understood it as Smith said, that Reed had 14 cents a bushel in the corn.

'' Q. Smith told you to pay Reed? A. Yes, he said he would not take Smith.

'' Q. He could n't have taken you if you had not bought the corn? A. No, he could not take me if I had not bought the corn; I did buy the corn; I bought it of Reed and Smith right there on the walk.''

Carl Nation was sworn and examined as a witness on the trial of the case, and after stating some pre-

liminary of his and Smith's going to the place where
the corn was and on their return, he said:

"I came back with Mr. Smith, and Reed and Hold-
erman was talking on the sidewalk.

"Ques. Was that after you had been down with
the cattle? Ans. Yes, the cattle were on the road
right then.

"Q. What took place at that time between Reed,
Holderman, and Smith? A. He bought the corn of
them there."

Wm. Reed was sworn and examined on the trial of
the case, and testified as follows:

"Ques. Did you ever sell your interest in that corn?
Ans. Yes, sir.

"Q. Who to? A. I sold my interest to Mr. Hold-
erman."

And he afterward in his testimony gave a detailed
account of his transaction with the corn.

The defendant below requested the court to give
the following instruction to the jury:

"If the jury believe from all the evidence in this
case that the contract and agreement between Smith,
Holderman and Reed was that Holderman and Na-
tion should pay 15 cents per bushel for the corn, 14
cents of which should be paid to Reed and 1 cent to
Smith, then your verdict will be for plaintiff, Smith,
for the amount of 1 cent per bushel for the actual
number of bushels of corn, not exceeding 6,500 bush-
els, and without regard to the amount Holderman
and Nation paid Reed."

This instruction should have been given as re-
quested. If Holderman and Nation contracted with
Smith and Reed for the purchase of the corn on the
leased premises, and it was by the terms of their pur-
chase agreed that they were to pay Reed 14 cents
per bushel, then, if in pursuance of such agreement

they settled with Reed and paid him according to such settlement in full for his part of the corn, Smith could only recover 1 cent per bushel for the corn on the farm, irrespective of what defendants below paid Reed. The whole matter of the agreement and settlement between the parties was a question of fact to be determined by the jury under the evidence and proper instructions of the court. If Smith had no settlement with Reed, and the corn was not averaged and paid for as provided in the lease, then Reed was not divested of his interest in the corn, and he had such property rights therein as were the subject of contract; and if he and Smith together with Holderman and Nation made such agreement, as claimed by defendants below, it would be a valid agreement, and Smith would only be entitled to collect the amount agreed to be paid to him. He could not claim 15 cents per bushel for the whole number of bushels of corn grown on the farm.

The judgment is reversed, and the case remanded to the district court, with direction to set aside the verdict and judgment and grant a new trial.

All the Judges concurring.